FILED
2014 Aug-21  PM 02:36
U.S. DISTRICT COURT
N.D. OF ALABAMA



# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ALABAMA
### WESTERN DIVISION

| | |
|---|---|
| PATTY A. CLARK, ) | |
| ) | |
| Plaintiff ) | |
| ) | |
| vs. ) | Case No.  7:13-cv-01565-HGD |
| ) | |
| CAROLYN COLVIN, ) | |
| COMMISSIONER, SOCIAL SECURITY ) | |
| ADMINISTRATION, ) | |
| ) | |
| Defendant ) | |

## MEMORANDUM OPINION

In this action under 42 U.S.C. §§ 405(g) and 1383(c)(3), plaintiff seeks judicial review of an adverse social security ruling which denied claims for disability insurance benefits (DIB) and Supplemental Security Income (SSI). (Doc.1). The parties filed written consent and this action has been assigned to the undersigned Magistrate Judge to conduct all proceedings and order the entry of judgment in accordance with 28 U.S.C. § 636(c) and Fed.R.Civ.P. 73. (Doc. 9). Upon consideration of the administrative record and the memoranda of the parties, the court finds that the decision of the Commissioner is due to be vacated and this action remanded for further action consistent with this opinion.

## I.    Proceedings Below

Plaintiff, Patty A. Clark, filed an application for disability insurance benefits under Title II of the Social Security Act on March 29, 2011 (Tr. 97), and an application for Supplemental Security Income benefits under Title XVI of the Social Security Act on March 29, 2011. (*Id.*). These applications were initially denied, and plaintiff requested a hearing before an Administrative Law Judge (ALJ) on June 1, 2011. (Tr. 103, 113-16). Hearings were held in this matter on July 13, 2012 (Tr. 74-95), October 10, 2012 (Tr. 57-73), and December 7, 2012 (Tr. 36-56).

The ALJ denied disability benefits to plaintiff on January 12, 2013, concluding that plaintiff did not have an impairment or a combination of impairments listed in, or medically equal to one listed in, the Regulations. (Tr. 23-24). The ALJ found that plaintiff retained the residual functional capacity (RFC) to perform sedentary work and that there were jobs in the national and local economies that were available for her. (Tr. 24-30). The Appeals Council declined to grant review of this decision on June 25, 2013. (Tr. 1-5). The Commissioner's decision is ripe for review under 42 U.S.C. §§ 405(g) and 1383(c)(3).

## II.   ALJ Decision

Disability under the Social Security Act is determined under a five-step test. 20 C.F.R. § 404.1520. First, the ALJ must determine whether the claimant is

engaging in substantial gainful activity. 20 C.F.R. § 404.1520(a)(4)(i). "Substantial work activity" is work that involves doing significant physical or mental activities. 20 C.F.R. § 404.1572(a). "Gainful work activity" is work that is done for pay or profit. 20 C.F.R. § 404.1520(b). Second, the ALJ must determine whether the claimant has a medically determinable impairment or a combination of medical impairments that significantly limits the claimant's ability to perform basic work activities. 20 C.F.R. § 404.1520(a)(4)(ii). Absent such impairment, the claimant may not claim disability. *Id.* Third, the ALJ must determine whether the claimant's impairment meets or medically equals the criteria listed in 20 C.F.R. § 404, Subpart P, Appendix 1. *See* 20 C.F.R. §§ 404.1520(d), 404.1525 and 404.1526. If such criteria are met, the claimant is declared disabled. 20 C.F.R. § 404.1520(a)(4)(iii).

If the claimant does not fulfill the requirements necessary to be declared disabled under the third step, the ALJ may still find disability under the next two steps of the analysis. The ALJ first must determine the claimant's residual functional capacity (RFC), which refers to the claimant's ability to work despite her impairments. 20 C.F.R. § 404.1520(e). In the fourth step, the ALJ determines whether the claimant has the RFC to perform past relevant work. 20 C.F.R. § 404.1520(a)(4)(iv). If the claimant is determined to be capable of performing past relevant work, then the claimant is deemed not disabled. *Id.* If the ALJ finds that the

claimant is unable to perform past relevant work, then the analysis proceeds to the fifth and final step. 20 C.F.R. § 404.1520(a)(4)(v). In the last part of the analysis, the ALJ must determine whether the claimant is able to perform any other work commensurate with her RFC, age, education and work experience. 20 C.F.R. § 404.1520(g). Here, the burden of proof shifts from the claimant to the ALJ to prove the existence in significant numbers of jobs in the national economy that the claimant can do given the RFC, age, education and work experience. 20 C.F.R. §§ 404.1520(g) and 404.1560(c).

With regard to steps one, two and three, the ALJ found that plaintiff has not engaged in gainful activity since May 21, 2010, and that she suffers from the severe impairments of obesity and degenerative disc disease of the lumbar spine, but that she does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1 (20 C.F.R. §§ 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925 and 416.926). (Tr. 23). At step four, the ALJ found that plaintiff is unable to perform any past relevant work (20 C.F.R. §§ 404.1565 and 416.965). (Tr. 29).

The ALJ found that plaintiff has the RFC to perform sedentary work as defined in 20 C.F.R. §§ 404.1567(a) and 416.967(a). He found that plaintiff can lift and/or carry up to ten pounds occasionally and less than ten pounds frequently. He further

found that she can sit for six hours in an eight-hour workday and stand and/or walk for at least two hours during an eight-hour workday.  According to the ALJ, plaintiff can push and/or pull with her upper and lower extremities using the same weight restrictions as shown above for lifting and/or carrying.  He states that the evidence shows that she has full range of motion in her neck, shoulders, elbows, wrists, fingers, hips, knees and ankles.  Her grip strength is normal bilaterally, as are her sensation and reflexes.  (Tr. 24).

At the hearing, plaintiff testified that she was unable to work due to injuries she sustained as a result of slipping in water and falling in October 2008.  She testified that she suffers from nerve damage in her back and left leg pain.  According to the ALJ, plaintiff testified that, although her physician told her not to lift more than 30 pounds, she could only lift about 15 pounds.  She also advised the ALJ that she could only sit for about 30 minutes and stand for approximately 20 minutes.  She testified that, although surgical intervention was suggested, she declined due to being advised that the success rate was not high enough to justify the risk.  (*Id.*).

The ALJ further noted that, on forms completed prior to the hearing level, plaintiff alleged that she could only lift 30 pounds and sit for approximately 45 minutes to an hour.  (*Id.*).  Although plaintiff claimed that she injured herself on October 8, 2008, she continued to work until May of 2010.  However, the ALJ noted

that plaintiff was treated by Dr. Marion Sovic, M.D., on November 24, 2008, when he performed a lumbar steroid injection. (*Id.*; *see* Ex. 5F). Although a large portion of plaintiff's medical records are dated prior to her alleged onset date, the ALJ stated that these records were considered and discussed for historical purposes. (Tr. 24).

For instance, the ALJ noted that, in February of 2009, plaintiff went to a hospital emergency room with complaints of low back pain which she rated as being a "ten out of ten." Her physical examination was unremarkable and she was found to have only subjective complaints of back pain with radiculopathy. (Tr. 24, citing Ex. 2F).

In March 2009, the ALJ noted that Dr. Thomas Powell, M.D., evaluated plaintiff. He described her as at "maximum medical improvement." Dr. Powell also noted that plaintiff had recently had a Functional Capacity Examination (FCE), but that this examination was invalid due to the plaintiff's "self-limiting behavior." Just what it was about plaintiff's behavior that was "self-limiting" is not stated.

The ALJ stated that Dr. Powell noted that an x-ray showed only mild degenerative disc disease, but with well-maintained disc spaces. He later performed a myleogram CT scan that showed a moderate disc bulge with a mild neural foraminal stenosis at L4-L5 and minimal facet arthropathy with minimal stenosis at L5-S1. (Tr. 25, citing Ex. 1F). She was referred to Dr. Martin Jones, M.D., for further evaluation.

Dr. Jones examined plaintiff on March 30, 2009.  She reported bilateral leg pain.  Physical examination showed tenderness with deep palpitation of her lumbar spine and a slightly decreased range of motion.  He recommended that plaintiff work half days at light duty for the next several weeks and then return to full-time, light-duty work.  (Tr. 25).  When plaintiff returned for re-evaluation on April 13, 2009, Dr. Jones  indicated that she had reached maximum medical improvement and that she was capable of working a full eight-hour day, but that she could not lift anything over 30 pounds without assistance.  (*Id.*).

Plaintiff was also seen by Dr. Marion Sovic, M.D., in April of 2009, again reporting low back pain with left side radiculopathy.  Records over the next several months show plaintiff doing well and that her medications were effective.  However, they also reflect that she received several lumbar epidural blocks during this time and that she "did fairly well" afterward.  (Tr. 25, citing Ex. 4F).  After her disability onset date of May 21, 2010, the ALJ states that plaintiff was seen by Dr. Sovic two more times, once on July 15, 2010, and again on October 13, 2010.  (Tr. 25).  However, one of the epidural blocks mentioned by the ALJ was administered to plaintiff, also by Dr. Sovic, on June 14, 2010.  (Ex. 5F).  During her follow-up visits to Dr. Sovic, she was described as doing "fairly well" though the records also reflect that she always

complained of pain which she reported varied from 4 on a scale of 1-to-10 on February 2, 2011, to 8 out of 10 on April 27, 2011. (Exs. 4F & 5F).

Plaintiff was again examined by Dr. Jones on August 16, 2010, and again reported low back pain and bilateral leg pain. An x-ray showed mild degenerative disc disease and spondylosis at L2-L3 and L4-L5. (Tr. 25). The ALJ then noted that plaintiff was again treated by Dr. Sovic on April 27, 2011. According to the ALJ, the treatment notes reflect that plaintiff was doing "very well" and that she only had her medication prescriptions refilled. However, though not mentioned by the ALJ, Dr. Sovic's treatment notes also reflect that plaintiff complained that her pain level was an 8 out of 10. (Ex. 5F at Tr. 339).

Next, the ALJ noted that Dr. Marshall Kuremsky, M.D., examined plaintiff on May 14, 2011, at the request of the Social Security Administration. (Tr.26). Plaintiff told Dr. Kurensky that her main problem was her back pain and leg pain. She told him that she could dress and bathe herself without assistance, stand for 20 to 30 minutes, walk for a quarter of a mile, lift up to 30 pounds, drive a car, and perform her household chores as long as she took her time. (*Id.*).

Records further reflect that plaintiff was able to get on and off the examining table and up and out of a chair without difficulty. Range of motion in her bilateral upper and lower extremities, cervical spine and lumbar spine were normal. (*Id.*). He

also noted that plaintiff's straight leg raise testing was also normal with no signs of nerve root tension.  She was able to walk on her heels and hoes, tandem gait and squat without difficulty.  Her motor strength was said to have been 5/5 bilaterally.  After his examination, Dr. Kurensky noted that there were no real objective findings or any limitation identified during his examination. (*Id.*).  However, despite his findings, plaintiff continued to complain about lower back pain and continued to receive epidural injections to try to relieve some of this pain.

On May 31, 2011, Robert Heilpern, M.D., a state agency medical consultant, reviewed the medical evidence in the record and opined that, despite her impairments, plaintiff would still be able to perform the requirements of medium exertional work, including lifting and/or carrying 25 pounds frequently and up to 50 pounds occasionally.  The ALJ gave this opinion little weight since it was not consistent with the findings of plaintiff's own physicians, who found that she could only lift up to 30 pounds.  (*Id.*).

The ALJ next stated that Dr. Sovic performed another epidural block on July 12, 2011.  (Ex. 13F).  In a follow-up visit with Dr. Sovic on July 25, 2011, plaintiff described herself of doing "fairly well."  In November 2011, the ALJ noted that plaintiff reported that she was doing well on her pain medication and that she "continues to function."  A review of this report reflects that plaintiff advised that she

was doing "fairly well" and that her pain level was a 6 out of 10.  In addition, the notes reflect that Dr. Sovic told her she could increase her pain medication (Lortab) and that he would perform another block on an as-needed basis.  (Ex. 5F at Tr. 411-12).

The ALJ next noted that a treatment note dated January 25, 2012, "shows that she was overall doing well."  (Tr. 26).  The ALJ does not mention that this same treatment note states that plaintiff's pain level was 6 out of 10 and that she advised that approximately one week prior, she had to go to the emergency room due to pain in her lower back and down her left leg.  (Ex. 13F at Tr. 409).  On May 2, 2012, plaintiff received another epidural block from Dr. Sovic.  (Tr. 26).

The ALJ stated that, although plaintiff continued to see Dr. Sovic through at least October of 2012, there is nothing within his treatment notes that indicates that plaintiff would be unable to perform work within the residual functional capacity defined elsewhere in his opinion.  (Tr. 26-27).  However, plaintiff was seeing Dr. Sovic for pain management, not for workers' compensation purposes.  In fact, there is nothing in his notes one way or the other related to whether plaintiff can perform work of any sort.

The ALJ did take note of the fact that, in January 2012, plaintiff was treated at an Urgent Care Clinic and the Bibb Medical Center emergency room.  She was found

to have lumbar radiculitis, lumbar pain and myalgia.  (Tr. 27, citing Ex. 15F).  According to the records cited by the ALJ, physicians at the Bibb County Medical Center found plaintiff to have degenerative disc disease of the lumbar spine.

Finally, the ALJ reviewed the medical records from the consultative examination performed on November 1, 2012, by Richard Rex Harris, M.D.  Dr. Harris found plaintiff to be 63 inches tall and to weigh 240 pounds.  She had a full range of motion in her neck, shoulders, elbows, wrists and fingers.  Her grip strength was normal bilaterally and sensation was normal in her upper extremities.  Her reflexes also were 1+ and equal in her upper extremities.  During the examination, plaintiff reported tenderness to palpitation in her lumbar spine and a decreased range of motion.  She had a full range of motion in her hips, knees and ankles, and she was able to walk heel-to-toe.  She could also squat and rise without difficulty.  According to the ALJ, Dr. Harris opined that plaintiff could perform sedentary work in the workplace.  (Tr. 27, citing Ex. 14F).

The ALJ also cited the Medical Source Statement of Ability to Do Work-Related Activities (Physical) form completed by Dr. Harris, wherein he opined that plaintiff could lift up to ten pounds, stand for two hours during an eight-hour workday, sit for two hours during an eight-hour workday, and walk for two hours in an eight-hour workday.  The ALJ noted that Dr. Harris found that plaintiff could only

sit, stand or walk in combination for a total of only six hours during an eight-hour workday. However, the ALJ also noted that Dr. Harris previously had stated that plaintiff could do sedentary work. (Tr. 27).

The ALJ concluded that plaintiff can perform work within the residual functional capacity he determined to be applicable to plaintiff. According to the ALJ, plaintiff alleged severe and chronic back pain and leg pain, but the objective medical evidence only showed the presence of mild degenerative disc disease of her lumbar spine and obesity. Thus, he concluded that there was no objective medical evidence to corroborate plaintiff's allegations of chronic and debilitating pain. He found her statements regarding her functional limitations are simply not fully credible. (Tr. 27).

In this regard, the ALJ stated that, while the evidence shows only mild degenerative disc disease, her treating physicians have only limited her to lifting no more than 30 pounds. He asserted that the treatment notes from Dr. Sovic show only regular refills and consistently show that she has "done very well" or "fairly well." (Tr. 27, citing Exs. 4F, 5F and 13F). In addition, Dr. Kuremsky found no "real objective findings or any limitations" after his examination of plaintiff. (Tr. 27, citing Ex. 6F).

With regard to plaintiff's complaints of pain, the ALJ found that the evidence does not establish the existence of an underlying medical condition which is of such

severity that it can reasonably be expected to give rise to the symptoms alleged by plaintiff. (Tr. 27-28).

The ALJ recognized that an individual with obesity will be found to meet the requirements of a listing if there is an impairment that, in combination with obesity, meets the criteria of a listing. It also may be determined that the combination of obesity and other impairments results in signs, symptoms and laboratory findings that are of equal medical significance to one of the listings. In the present case, the ALJ found that plaintiff's obesity is not so severe as to prevent effective ambulation, reaching, orthopedic or postural maneuvers. However, he found that it does, in combination with her degenerative disc disease, reduce her ability to lift and/or carry more than ten pounds on a regular basis. As such, the ALJ found that a reduction to only sedentary work was warranted and that these limitations are accounted for in the RFC as determined by the ALJ. (Tr. 28).

The ALJ also noted that, despite her impairments, plaintiff was able to cook meals, perform her household chores, visit her mother, shop for groceries and other household needs, care for her personal needs, drive a car, venture out of her home alone, pay her bills and handle bank accounts. She also enjoys watching television and attends church regularly. According to the ALJ, all of these activities, considered as a whole, are consistent with activities that would be performed at the sedentary

level of exertion.  (*Id.*).  However, in her testimony, plaintiff testified that the pain in her back was so debilitating, she had difficulty sleeping at night and cannot do housework like she used to.  She also cannot walk like she was once able to do.  (Tr. 9, 920-91).  She also testified that, on the occasions when she does do this, she must rest for an entire day.  (Tr. 92).  She also stated that her daughter helps her with her housecleaning.  (Tr. 93).

The ALJ also considered and gave some weight to the state agency medical consultant, Dr. Robert Heilpern.  While Dr. Heilpern essentially found that plaintiff could perform work at the medium level of exertion, the ALJ determined that plaintiff is more limited than determined by Dr. Heilpern.

According to the ALJ, he gave the findings and opinion of Dr. Kuremsky great weight because these findings are based upon the direct observation and examination of plaintiff, as well as a review of her entire medical record and course of treatment.  The ALJ also noted that Dr. Kuremsky's findings and opinion are internally consistent and consistent with the evidence as a whole.  (Tr. 28).  He stated that, because they are well supported and uncontradicted by other objective evidence, they are entitled to great weight.  (*Id.*).

With regard to the findings of Dr. Jones, Dr. Powell and Dr. Sovic, the ALJ stated:

Dr. Jones limited the claimant to lifting no more than thirty pounds, and Dr. Powell limited the claimant to lifting no more than twenty pounds. Dr. Sovic's treatment notes do not contain any functional limitations. I find that because of her obesity, in conjunction with her degenerative disc disease, that the claimant is slightly more limited and can lift/carry no more than ten pounds. Nonetheless, the findings of Drs. Sovic, Martin and Powell have been fully considered. As their medical records have been very useful in determining the full scope of the claimant's impairments, they have therefore been accorded substantial weight.

(Tr. 28).

The ALJ further noted that Dr. Harris opined that the claimant could perform work at the sedentary level of exertion in the workplace. He further noted that, on the Medical Source Statement of Ability to Do Work-Related Activities (Physical) form, Dr. Harris accounted for only six hours of activity within a normal eight-hour day. According to the ALJ, this appears to be an oversight on Dr. Harris' part because he clearly opined that plaintiff could work at the sedentary level of exertion in his examination summary. The ALJ stated that Dr. Harris' examination of plaintiff was unremarkable, other than for subjective complaints of tenderness to the lumbar spine region and a decreased range of motion in her lumbar spine. He stated that, in all other respects, her examination was normal. As a result, the ALJ stated his belief that Dr. Harris simply erred in his completion of the Medical Source Statement of Ability to Do Work-Related Activities (Physical) form wherein he did not account for a full

eight-hour workday.  Aside from this, he gave the opinion and findings of Dr. Harris great weight.  (Tr. 29).

Functioning under the RFC as the ALJ found it to exist, the vocational expert (VE) testified that plaintiff would be able to perform jobs such as general office clerk, order clerk/other clerk, and table worker.  Consequently, he concluded that she was not "disabled" under the Social Security Act.  (Tr. 30-31).

## III.   Plaintiff's Arguments for Reversal

Plaintiff asserts that the ALJ failed to properly evaluate the medical evidence of record from the examining source, Dr. Harris.  (Doc. 10, Plaintiff's Brief, at 6-13). In his report, Dr. Harris concluded that plaintiff has chronic lumbar pain with a reported history of degenerative disease on lumbar MRI.  He then indicated on the Medical Source Statement of Ability to Do Work-Related Activities (Physical) form that plaintiff would only be able to sit two hours, stand two hours and work two hours in an entire eight-hour workday.  According to plaintiff, Dr. Harris was of the opinion that plaintiff could not work a full eight-hour day, which would lead to the conclusion that she was "disabled."  The VE present at plaintiff's hearing testified that this would be the case.  (*Id.* at 7, citing Tr. 55).

Plaintiff takes issue with the ALJ's conclusion that the limitations noted by Dr. Harris were "an oversight" based on the fact that he "clearly dictated his opinion that

the claimant could perform work at the sedentary level of exertion in his summary examination." (*Id.*, citing Tr. 28-29).  According to plaintiff, it is not unusual for an examining physician to state that a plaintiff is limited to a certain exertional level, but is also limited in hours as to how long they can perform at that level.  (*Id.*).  However, plaintiff cites no cases or other authority for this proposition.

Plaintiff also asserts that the ALJ failed to properly consider plaintiff's pain pursuant to the Eleventh Circuit's three-part "pain standard."  *See Foote v. Chater*, 67 F.3d 1553, 1560-61 (11th Cir. 1995) (citing *Holt v. Sullivan*, 921 F.2d 1221, 1223 (11th Cir. 1991)).

## IV.   Discussion

Plaintiff takes issue with the ALJ's conclusion that the limitations noted by Dr. Harris were "an oversight."  The ALJ acknowledged that Dr. Harris indicated in the Medical Source Statement that plaintiff would only be able to sit for two hours, stand for two hours and walk for two hours in an entire eight-hour work day.  The VE testified that, if plaintiff could only work six hours, she would be precluded from all employment.  However, the ALJ determined that the limiting of plaintiff to six hours of work in an eight-hour workday was an oversight because Dr. Harris elsewhere stated that claimant could perform work at the sedentary level of exertion.  (Tr. 28-29).

However, a review of the Medical Source Statement completed by Dr. Harris reflects that he found that plaintiff could only sit for 15 minutes, stand for 15 minutes or walk for 15 minutes in an hour without interruption. (Tr. 426). Furthermore, after noting that plaintiff could only sit for two hours, stand for two hours and walk for two hours in an eight-hour work day, the form contains the question: "If the total time for sitting, standing and walking does not equal or exceed eight hours, what activity is the individual performing for the rest of the eight hours?" To this question, Dr. Harris responded: "Rest." (*Id.*).

Furthermore, Dr. Harris noted that plaintiff could only occasionally carry up to ten pounds and could never lift or carry a greater weight. (Tr. 425). He also placed limitations on a number of other activities, including reaching, the operation of foot controls, climbing, stooping, kneeling and crouching, and working at unprotected heights. The bases for all of these limitations is stated to be "back pain." (Tr. 427-28).

In addition, when the ALJ provided the VE with a hypothetical question and then asked if there were other jobs that exist in the national economy that the hypothetical person could perform, the ALJ noted, before she answered, that she indicated she was unclear about the degree of pain suffered by the plaintiff. The ALJ responded: "The degree of – pain is, pain is subjective." The VE then asked: "Mild,

moderate, moderately severe, or severe?" (Tr. 52). The ALJ responded: "I, I can't give you that. I'm not going to give any pain situation, because it's subjective, so I'm not suggesting any level of pain, because it's subjective. In my hypothetical, I'm not posing pain. I'm only saying that she has some difficulty, claiming, that – when she gets up and sits down, I'm only saying that she has some difficulty, claiming that – when she gets up and sits down." (Tr. 53). Based on this information, the VE found that plaintiff could perform the job of general office clerk. (*Id.*).

The ALJ's determination that plaintiff could work at some sedentary jobs for a full eight-hour day is not based on substantial evidence. Although giving "great weight" to Dr. Harris' testimony, the ALJ concluded that Dr. Harris' report reflecting that plaintiff could sit, walk or stand for only six hours in an eight-hour day was "an oversight." The evidence does not support this. The ALJ assumed that this was an oversight because Dr. Harris also stated that plaintiff could do sedentary work, apparently concluding that a determination that a claimant can do sedentary work also means that they can do that work for eight hours in a day. That simply is not so. There may be occasions when it can be concluded that a claimant can do sedentary work and there still remain a question whether it can be performed for a full eight-hour workday. *See, e.g., Watkins v. Comm'r of Soc. Sec.*, 457 Fed. Appx. 868 (11th Cir. 2012).

Likewise, the ALJ did not consider whether plaintiff was suffering from any pain when he proposed his hypothetical question to the VE, other than to state that she claims to be in pain, despite the fact that Dr. Harris stated that plaintiff had chronic lumbar pain with a reported history of degenerative disc disease on lumbar MRI. He also specifically noted that plaintiff had tenderness to palpitation of the lumbar spine with a limited range of motion indicated in the lumbar spine. In addition, he stated that plaintiff had diminished sensation on the dorsal aspect of the left foot and had difficulty walking heel-to-toe or squatting and rising. (Tr. 424).

Thus, there is a lack of substantial evidence that Dr. Harris' apparent restriction of plaintiff to sitting/walking/standing for six hours out of an eight hour day was "an oversight."

On the other hand, Dr. Marshall Kuremsky, M.D., examined plaintiff on one occasion and noted that her range of motion in bilateral and lower extremities, cervical and lumbar were all normal and symmetric. He further stated that straight-leg testing was negative for signs of nerve root damage, and that plaintiff can walk on her heels or toes, and squat down without difficulty. (Tr. 369). He concluded that there were "no real objective findings or any limitations that were identified based on [his] examination." (Tr. 370). The ALJ held that Dr. Kuremsky's findings and opinion are internally consistent and consistent with the evidence as a whole. (Tr.

28).  He stated that, because they are well supported and uncontradicted by other objective evidence, they are entitled to great weight.  (*Id.*).  However, the ALJ overlooks the fact that Dr. Kuremsky's findings are *not* consistent with the evidence as a whole.  Plaintiff's treating physician, Dr. Sovic, treated plaintiff for severe back pain for a period of years.  Although Dr. Sovic indicated on several occasions that plaintiff was "doing fairly well" on many of those occasions, he also noted that her stated pain level was still often quite significant.  For instance, on April 27, 2011, he noted that her level of pain was an 8 out of 10.  Furthermore, while Dr. Kuremsky found that plaintiff had an unlimited range of motion in her lumbar spine, Dr. Harris reported that plaintiff had a decreased range of motion in her lumbar spine.

In addition, a  myelogram CT scan by Dr. Powell reflected that plaintiff had a moderate disc bulge with a mild neural foraminal stenosis at L4-L5 and minimal facet arthropathy with minimal stenosis at L5-S1.  Likewise, on several occasions in 2009 and later, plaintiff had repeated epidural injections to try to alleviate the pain in her lower back.  Consequently, Dr. Kuremsky's opinion is not "uncontradicted by other objective evidence" as stated by the ALJ.

With regard to plaintiff's claim that she suffers from debilitating pain, the ALJ stated that the evidence does not establish the existence of an underlying medical condition which is of such severity that it can reasonably be expected to give rise to

the symptoms alleged by plaintiff.  A claimant who seeks "to establish a disability based on testimony of pain and other symptoms" is required to show: "(1) evidence of an underlying medical condition; and (2) either (a) objective medical evidence confirming the severity of the alleged pain; or (b) that the objectively determined medical condition can reasonably be expected to give rise to the claimed pain." *Wilson v. Barnhart*, 284 F.3d 1219, 1225 (11th Cir. 2002) (*per curiam*).  Furthermore, "credibility determinations are the province of the ALJ."  *Moore v. Barnhart*, 405 F.3d 1208, 1212 (11th Cir. 2005) (*per curiam*).  However, an ALJ must articulate "explicit and adequate reasons" in order to discredit subjective testimony.  *Wilson,* 284 F.3d at 1225.  Failure to do so "requires, as a matter of law, that the testimony be accepted as true."  *Id.*  An ALJ is not required to "specifically refer to every piece of evidence in his decision," so long as the decision is sufficient to allow the court to conclude that the ALJ considered the claimant's medical condition as a whole.  *Dyer v. Barnhart*, 395 F.3d 1206, 1210 (11th Cir. 2005) (*per curiam*).  The ALJ has a duty to develop the record fully and fairly.  *Wilson v. Apfel*, 179 F.3d 1276, 1278 (11th Cir. 1999) (*per curiam*).

In this case, the ALJ's conclusory statement that plaintiff did not "establish the existence of an underlying medical condition which is of such severity that it can reasonably be expected to give rise to the symptoms alleged by the plaintiff" is not

an "explicit and adequate reason" to justify the failure to credit the plaintiff's testimony regarding her subjective pain.   Furthermore, the ALJ incorrectly characterized the report of Dr. Kuremsky as "uncontradicted" and assumed, against the weight of available evidence, that Dr. Harris made "an oversight" when he indicated plaintiff could only work six out of eight hours in a workday.  Both of these experts' findings were given great weight by the ALJ.  Based on this, the undersigned concludes that the determination that plaintiff was not disabled was not based on substantial evidence.

Therefore, the Commissioner's decision will be vacated and the matter remanded to the Commissioner for further proceedings consistent with this Opinion. Upon remand, the ALJ shall clear up the ambiguity concerning Dr. Harris' findings regarding whether plaintiff can work for a full eight-hour workday, and make a more detailed finding concerning plaintiff's alleged pain, consistent with the Eleventh Circuit pain standard.  Furthermore, the ALJ shall reconsider this evidence and all the other evidence submitted *as a whole* to make a determination as to whether plaintiff is, in fact, disabled under the Social Security Act, including specific articulations of the weight accorded the evidence considered by the ALJ and the reasons for his decision.

A separate order in conformity with this Memorandum Opinion will be entered contemporaneously herewith.

DONE this 21st day of August, 2014.

HARWELL G. DAVIS, III
UNITED STATES MAGISTRATE JUDGE